IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KING RECORDS, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:03cv1130 |
| ) | |
| DONALD M. DAILY, et al., ) | Judge Thomas A. Wiseman, Jr. |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Before the Court is Plaintiffs' Motion to Dismiss for Lack of Standing by Defendants to Pursue Their Claims (Doc. No. 264). In support of their motion, Plaintiffs have filed the Declaration of Attorney Robert S. Besser (Doc. No. 265). Defendants Donald M. Daily and Harold W. Daily, Jr. ("Defendants" or the "Daily Parties") filed their response in opposition to the motion along with numerous exhibits (Doc. No. 272 and attachments) and two Declarations (Doc. Nos. 273 and 274). With the Court's permission, Plaintiffs filed a Reply brief with additional exhibits (Doc. No. 280). The Court, having reviewed all the various filings, will deny Plaintiffs' motion for the reasons set forth below.

## BACKGROUND

The background of this case has been detailed elsewhere (*see, e.g.*, Sealed Doc. No. 228, Memorandum Opinion dated 3/21/2006) and will not be set forth here other than as strictly pertinent to the present motion. This action was first filed in November 2003 for the purpose of enforcing a Settlement Agreement that purported to resolve a different lawsuit between the same parties to this suit. Pursuant to the Settlement Agreement, the George Jones Musicor Master Recordings (the "Masters") were to be transferred to the Defendants. Although the Settlement Agreement was executed on August 30, 2003, the parties did not actually perform their obligations thereunder, including the physical transfer of the Masters, until November 1, 2004—under Court mandate and supervision. The continued litigation since that date involves allegations on both sides that the other party did not fully perform as required by court order.

The substantive facts underlying Plaintiffs' motion are apparently undisputed. After the Daily Parties took joint possession of the Masters on November 1, 2004, they separated their interests and conveyed them to two limited partnerships, Pappy Daily Music, LP ("Pappy Daily Music") (owned or controlled by Defendant

Harold Daily, Jr.), and Glad Music Publishing and Recording, LP ("Glad Music Publishing") (owned or controlled by Defendant Donald Daily). Each of these limited partnerships owns a 32.5% interest in the Masters, and together the Daily Parties, through their respective limited partnerships, own a 65% interest. The remaining 35% interest was transferred to the Law Offices of David W. Showalter in accordance with a Contingency Fee Contract between the Daily Parties and Mr. Showalter. The law firm then transferred its 35% ownership interest in the Masters to Tempest Publishing, Inc. ("Tempest Publishing"), also owned by Mr. Showalter.

At the same time, the new owners of the Masters entered into an "Assignment and Agreement" ("Assignment") expressly for the purpose of allowing the Daily Parties to continue to conduct this litigation in their own names. The Assignment purports to "memorialize [the parties'] ongoing agreement to authorize and ratify the actions of the parties presently involved in [this litigation] (the 'Litigation') . . . ." (Doc. No. 265, Ex. B.) More specifically, Pappy Daily Music, Glad Music Publishing, Tempest Publishing and Masters Licensing recognized that they "may have an interest in certain rights and claims" relating to this Litigation. (*Id.*) To the extent any interest in the Litigation had vested in them, these parties explicitly assigned back to the Daily Parties "the full right, authority and power to prosecute [their] interest . . . in The Claims in the Litigation and appoint[ed] the Daily Parties to prosecute same in the names of the Daily Parties." (*Id.*) The Daily Parties, for their part, agreed "to prosecute The Claims in the Litigation to final judgment." (*Id.*) The Agreement purports to be effective "November 1, 2004 or on the date any of the undersigned acquired rights in The Claims, whichever is earlier," and further explicitly states, "Any and all acts of the Daily Parties taken or to be taken in respect of The Claims is [sic] hereby ratified." (*Id.*) The Assignment is signed by Harold Daily, Jr. in his individual capacity and "as Manager of Pappy Daily Music GP LC as General Partner of Pappy Daily Music LP"; by Donald Daily individually and "as Manager of Glad Music Publishing & Recording GP LC as General Partner of Glad Music Publishing & Recording LP"; and by David Showalter in his capacity as "President of Tempest Publishing, Inc., Manager of Masters Licensing GP LC as General Partner of Masters Licensing LP and as President of David W. Showalter PC." (*Id.*)

Masters Licensing, LP ("Masters Licensing"), according to the Defendants, was formed by David Showalter "so that one entity could managed the future exploitation of the [M]asters." (Doc. No. 272, at 2.) In fact, after the above-referenced conveyances occurred and apparently at the same time the Assignment

was executed, Pappy Daily Music, Glad Music Publishing, and Tempest Publishing entered into a "Master Lease Agreement" (MLA") with Masters Licensing as "Licensee." The MLA acknowledges that as of November 1, 2004, Pappy Daily Music LP and Glad Music Publishing together had a 65% ownership interest in the Masters, and that Tempest Publishing owned a 35% interest. Pursuant to the MLA, these three entities granted to Masters Licensing the exclusive rights to manufacture, use and exploit the Masters and to enforce and otherwise protect the rights of the owners in the Masters, including the right to file suit, litigate and settle claims, and take such other action as might be necessary. (MLA ¶ 1(a) - (e).) In exchange, Masters Licensing agreed to pay the owners a royalty of 30% of the net revenue generated by exploitation of the Master Recordings. The owners maintained ownership of the Masters and all copyright and property rights.

The only apparent factual dispute is whether the Plaintiffs knew or should have known about the above-referenced agreements and the transfers of interests to which they pertain. Plaintiffs claim they only became aware of the agreements when they were produced at the parties' document exchange on June 20, 2006 and that, prior to that date, the Daily Parties and Mr. Showalter had taken active steps (such as refusing to answer direct interrogatory questions) to conceal the arrangement. The Daily Parties argue that they have never actively sought to conceal the information and that Plaintiffs have known about David Showalter's interest, at least, since February 2005. The Court concludes that this dispute is irrelevant to Plaintiffs' present motion.

In their motion, Plaintiffs contend that as a result of the Daily Parties' transfer of their respective interests in the Masters, the Daily Parties no longer have standing to pursue their counterclaims in this action. The Daily Parties, in response, contend that the real issue is whether the Daily Parties are "real parties in interest," not whether they have standing, and that they both have standing and are the real parties in interest for purposes of pursuing this litigation.

**ANALYSIS**

An "assignment" is a transfer of property or some other right from one person (the "assignor") to another (the "assignee"), which confers a complete and present right in the subject matter to the assignee. An assignment is a contract between the assignor and the assignee and is interpreted or construed according to rules of contract construction. *See In re Kingsport Ventures, L.P.*, 251 B.R. 841, 847 (E.D. Tenn.2000) (applying Tennessee law to the construction of an assignment contract). There is no doubt that under

Tennessee law, the right to pursue a cause of action is generally assignable. *S & M Brands, Inc. v. Summers*, 420 F. Supp. 2d 840, 845 (M.D. Tenn. 2006) (citing *Can Do, Inc. v. Manier, Herod, Hollabaugh and Smith*, 922 S.W.2d 865, 867 (Tenn. 1996)).

In addition, Rule 17(a) of the Federal Rules of Civil Procedure mandates that "every action . . . be prosecuted in the name of the real party in interest." The general rule is that an assignee in whom legal title to a cause of action is vested must bring the action because he is the real party in interest. "Typically, an assignor cannot bring an action after he has fully and completely transferred to another title to a cause of action." *Id.* (citations omitted). *Bishof v. Yarbrough Const., Co.*, C.A. No. 02A01-9411-CH-00256, 1996 WL 490629, at *7 (Tenn. Ct. App. Aug. 29, 1996) (quoting 6A C.J.S. Assignments § 73 (1975)).

As the above-referenced Assignment makes clear, the Daily Parties had conveyed all right title and interest in the Masters to Pappy Daily Music, Glad Music Publishing and David W. Showalter PC at some point after execution of the Settlement Agreement but no later than November 1, 2004. This conveyance may or may not have included the right to pursue the claims in this litigation. At the same time, however, according to the Assignment, these transferee entities assigned back to the Daily Parties the cause of action and any rights that might have vested in them to continue to prosecute the counterclaims in this lawsuit. It therefore appears that the Daily Parties at all times maintained the ability to continue to pursue their claims in this lawsuit in their own names.

King Records argues that the Assignment is not effective because its effective date was November 1, 2004, as a result of which it "could not have conveyed any interest in the claims asserted herein because the parties to the assignment . . . were not parties to the Settlement Agreement and cannot, therefore, have any right to assert claims for its breach." (Doc. No. 264, at 5.) This argument has no merit, as it ignores the ability of the Daily Parties, apparently exercised, to convey their rights to the Masters under the Settlement Agreement to whomever they might have chosen, and their right, also exercised, to retain the ability to enforce the terms of the Settlement Agreement.

King Records also contends that the so-called "Concealed Parties" (Pappy Daily Music, Glad Music Publishing, Tempest Publishing, and Masters Licensing) were not third-party beneficiaries of the Settlement Agreement and therefore could not have had standing to enforce it. This argument likewise has no merit. Regardless of whether the conveyance of the rights to the Masters would also have conveyed the right to

enforce the Settlement Agreement, the Daily Parties expressly retained the right to pursue this lawsuit in their own names. Whether because they retained the right to pursue the cause of action despite conveying title to the Masters or because they assigned the cause of action back to themselves, they are the proper parties in this action.[1]

Finally, Plaintiffs claim that the so-called Concealed Parties "never acquired any rights to 'assign back' to the Daily Parties." (Doc. No. 280, at 6.) If that is indeed the case, then the Assignment was simply an unnecessary precaution on the party of the Daily Parties. However, Plaintiffs further claim, somewhat inconsistently, that Masters Licensing is the only party with a direct interest in the issues now being litigated, since Masters Licensing holds the exclusive right to exploit the Masters. Plaintiffs presumably intend to imply that Masters Licensing is the only party that would have standing to continue to pursue this litigation. Notwithstanding, the MLA provided that a mere license was conveyed to Masters Licensing, not ownership of the Masters. Further, to the extent Masters Licensing might otherwise have been a proper party to this lawsuit, David Showalter signed the Assignment in his representative capacity for both Masters Licensing and Tempest Publishing, so whatever rights either of those entities might have obtained as a result of the various conveyances, they all recognized that the Daily Parties remained the proper parties to litigate this action. This argument also fails.

## CONCLUSION

There is no indication that Plaintiffs have been prejudiced by the above-referenced conveyances or that they risk duplicative litigation by different parties claiming the same rights. To the extent that the Daily Parties might have conveyed away their rights in this cause of action when they conveyed their interest in the Masters, the cause of action was expressly conveyed back to them at the same time. They continue to have standing in this action and are real parties in interest for purposes of Rule 17(a). Plaintiffs' motion will therefore be denied. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge

---

[1] Regardless of whether the so-called Concealed Parties were third-party beneficiaries of the Settlement Agreement, the Daily Parties likely could have transferred all rights under the Settlement Agreement to them, including the right to enforce the Agreement in their own names. That issue, however, is not presented here.